SAMPSON BLOSSMAN et als. *v.* CAPTAIN HOOPER, Steamer LAUREL HILL and OWNERS.

The defendant was a common carrier ; and, as such, he was responsible for the baggage of passengers. A loss suffered in consequence of the fault of the defendant's servant must be made good.

A PPEAL from the Fourth District Court of New Orleans, *Price,* J. *M. Grivot,* for defendants and appellants. *M. Reynolds* and *John M. Leggett,* for plaintiffs.

BUCHANAN, J.    Plaintiff's daughter took passage on board the Laurel Hill from New Orleans to Port Hudson. Her baggage, contained in a trunk with her name on a card attached, was put on board the boat.

This trunk was put out, by mistake of the porter of the boat, at a landing in

the Parish of St. James—the Vacherie post office. It was missed when the boat was just below Baton Rouge; and the porter recollecting that a trunk answering the description had been put ashore below, the Laurel Hill engaged to forward the trunk, if it could be found, by the Capitol or Princess, river packets, to Port Hudson, and thence to Clinton, *via* the Clinton & Port Hudson Railroad.

On the return trip of the Laurel Hill down the river, the trunk was obtained at the Vacharie post office, and taken by the Laurel Hill to New Orleans, where it was put on board the Princess. A receipt was taken from the Princess for the trunk, in the following words:

" Received in good order, from steamer Laurel Hill, on board steamer Princess, New Orleans, April 27th—'58, one trunk, freight paid—Miss Blossman, Clinton, Pt. H. R. R., Pt. Hudson."

The trunk was forwarded to Clinton per railroad; and when received by plaintiff's daughter, was found to have been broken open, and robbed of the greater part of its contents.

The value of the contents of the trunk, as charged in the petition, is proved.

The evidence leaves us entirely in the dark as to the precise place at which the trunk was robbed. It is only certain that this must have been done between the original putting of the trunk on board the Laurel Hill by plaintiff, and the reception of the trunk by his agent at Clinton.

The defendant was a common carrier. As such, he was responsible for the baggage of passengers. C. C., Arts. 2722, 2725, 2936, 2937, 2938, 2939.

The loss suffered by plaintiff was the consequence of the fault of the defendant's servant.

But it is contended by defendant's counsel, that the liability of the defendant as carrier was released by the agreement made with plaintiff's agent, and the subsequent delivery of the trunk to the Princess, in pursuance of that agreement. We do not so understand the legal effect of the evidence on this point. Had the trunk not been put ashore at the Vacherie post office, the plaintiff's daughter would have taken it ashore with her at Port Hudson, and the defendant's responsibility of carrier would there have terminated. But inasmuch as the young lady's baggage could not have been delivered to her at the landing of Port Hudson, and her ultimate destination was Clinton, the other terminus of the railroad, the defendant came under a special engagement to deliver the trunk to her at Clinton, and thus save her the loss of time (perhaps fruitless) of waiting at Port Hudson for the arrival of another steamboat with her trunk. Under this special contract, we hold the defendant bound for the safe delivery of the trunk and its contents *in Clinton.*

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

DUFFEL, J., recused himself for relationship to a party.